IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL CHILL and** | ) | |
| **DENISE CHILL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00191** |
| | ) | **Judge Aleta A. Trauger** |
| **FARMERS INSURANCE COMPANY** | ) | |
| **and JERRY SHIPP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court are the Amended Motion to Dismiss (Doc. No. 30) and, somewhat paradoxically, the Motion to Intervene (Doc. No. 27), both filed by defendant Farmers Insurance Company ("Farmers").[1] For the reasons set forth herein, both motions will be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Michael Chill and Denise Chill, Missouri residents, were involved in a car accident in Nashville, Tennessee on March 7, 2019, on Interstate 24, when a vehicle driven by defendant Jerry Shipp, an Oklahoma resident, collided with the rear end of a vehicle driven by Michael Chill and in which Denise Chill was a passenger. The plaintiffs allege that Shipp's negligence or recklessness caused the accident, that both Michael and Denise suffered injuries and incurred medical expenses in excess of $147,000 and $42,000, respectively, and that Shipp was underinsured for the injuries he caused, having automobile insurance with liability limits of

---

[1] Farmers states that it was improperly named in the Complaint and Summons and that its correct name is Farmers Insurance Company, Inc. (Doc. No. 30, at 1 n1.)

$100,000. The plaintiffs also allege that, at the time of the accident, the plaintiffs were insured through an insurance policy with Farmers, Policy Number 18671-06-70 ("Policy"), which provided underinsured and uninsured motorist coverage.

As relevant here, the plaintiffs assert two causes of action against Farmers: (1) breach of contract, based on Farmers' alleged "fail[ure] to pay Plaintiff[s] in accordance with the terms of [their] Underinsured Motorist coverage" (Doc. No. 1 ¶¶ 34, 60); and (2) "vexatious refusal to pay" the plaintiffs' claims for underinsured motorist benefits under their policy, without reasonable cause or excuse (*id.* ¶¶ 39–40, 65–66), in violation of Mo. Rev. Stat. § 375.420.

Farmers filed an Amended Motion to Dismiss and supporting Memorandum of Law on October 26, 2020. (Doc. Nos. 30, 31.) It had previously filed a Motion to Intervene (Doc. No. 27), which anticipates that its Motion to Dismiss will be granted.[2] The plaintiffs have filed a Response in opposition to both motions (Doc. Nos. 34, 36), and Farmers filed a Reply in support of each motion (Doc. Nos. 37, 38).

## II.     MOTION TO DISMISS

### A.      Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing

---

[2] Farmers' original Motion to Dismiss (Doc. No. 25) was filed contemporaneously with its Motion to Intervene. The Amended Motion, which entirely supersedes the original Motion, abandons the argument that the Complaint should be dismissed under Rule 12(b)(3) for improper venue.

that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A court presented with a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). "Pursuant to this standard, the Sixth Circuit has consistently allowed district courts to consider affidavits and exhibits submitted by defendants when documents such as insurance policies, ERISA plan documents, or other contracts are central to the plaintiffs' cause of action." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 764 (E.D. Ky. 2019) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) (holding that an insurer's attachment of life insurance policies to its 12(b)(6) motion did not require the court to convert the motion to one for summary judgment, where policies were referred to throughout complaint and were central to insureds' fraud claim arising from the purchase of policies); *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (finding the defendant properly attached plan documents to a 12(b)(6) motion in an ERISA case), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002))). In *Weiner*, the Sixth Circuit reasoned that "a defendant may introduce certain pertinent documents," such as a "written instrument" that may be attached as an exhibit to a pleading pursuant to Federal

Rule of Civil Procedure 10(c), "if the plaintiff fails to do so." *Weiner*, 108 F.3d at 89. If defendants were not permitted to do so, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

In this case, the plaintiffs' two causes of action against Farmers are premised upon the assertion that Farmers breached its obligations to the plaintiffs under the underinsured clause of the Policy issued to them by Farmers. The Policy is referred to in the Complaint, and there is no question that its terms are central to the plaintiffs' claims. *See Bassett*, 528 F.3d at 430. Accordingly, the court finds that it may consider the Policy submitted by the defendant with its Motion to Dismiss, without converting the motion into one for summary judgment.

### B.    The Policy

The Policy ensures that Farmers will "pay damages an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident and arising out of the ownership, maintenance or use of an underinsured motor vehicle." (Doc. No. 31-1, at 14, 46.) However, Farmers becomes obligated to "pay under this coverage only after the limits of liability of all bodily injury liability bonds or policies applicable to an underinsured motor vehicle have been *exhausted by payment of judgments or settlements*." (*Id.* at 14, 46 (emphasis added).)

### C.    Analysis

Based on the Policy language, Farmers argues that the plaintiffs' claims fail under clearly established Missouri law, because Farmers' obligations under the Policy have not yet been triggered and the claims are premature. That is, in the absence of a settlement with the underinsured motorist for the policy limits or a judgment against the underinsured motorist in excess of the policy limits, Farmers has no contractual obligation to pay damages under the underinsured motorist clause of the Policy. Without addressing either the language of their own Policy or

Missouri law, the plaintiffs argue only that they have alleged on the face of the Complaint sufficient facts to support their claims against Farmers, and they cite to an opinion by the Idaho Supreme Court in support of their assertion that disallowing claims such as theirs would unfairly punish injured victims and cause drastic delays in victims' ability to obtain full coverage for their injuries. (Doc. No. 34, at 3 (citing *Hill v. Am. Family Mut. Ins. Co.*, 239 P.3d 812 (Idaho 2010)).) They also argue that the cases cited by the defendant are distinguishable.

### 1.    *Choice of Law*

Although neither party addresses this question, the court must first determine which jurisdiction's law to apply. The basis for jurisdiction in this court is diversity, under 28 U.S.C. § 1332. A federal court sitting in diversity applies the choice of law rules of the forum state. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). The court must therefore apply Tennessee law to determine which state's laws govern the plaintiffs' claims.

The first cause of action against Farmers is breach of contract. Generally, Tennessee follows the rule of *lex loci contractus*, which means that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006) (quoting *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)). More specifically, "the liability of an insurance company under a policy of insurance is determined by the law of the state where the contract for insurance was made." *Stakem v. Randolph*, 431 F. Supp. 2d 782, 785 (E.D. Tenn. 2006) (citing *Carr v. Am. Universal Ins. Co.*, 341 F.2d 220, 222 (6th Cir. 1965)); *aff'd*, 228 F. App'x 600 (6th Cir. 2007). Where, as here, the plaintiffs were residents of Missouri, and the subject Policy was issued and delivered to them in Missouri, Missouri law governs the interpretation of the Policy.

*Accord id.* (applying Florida law where the plaintiffs resided in Florida when they purchased the subject automobile insurance policies providing uninsured motorist coverage).

The second cause of action, for "vexatious refusal to pay," is a tort created by Missouri statute, which permits plaintiffs to recover attorney's fees and additional damages against an insurance company in excess of the amount of a loss, if the insurance company "refused to pay such loss without reasonable cause or excuse." Mo. Rev. Stat. § 375.420. Clearly, interpretation of the statute is governed by Missouri law. Moreover, to the extent that a finding of liability under the statute depends upon a preceding determination of breach of the operative insurance policy, that determination, too, is governed by Missouri law. *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. 2000) (*en banc*) (recognizing that, when an insurance company wrongfully refuses to pay a claim, the insured can bring a breach of contract claim to recover the amount due under the insurance policy and, under § 375.420, may collect extra-contractual damages, including attorney fees, costs, and a penalty amount, if the insurance company's refusal to pay is vexatious, unreasonable, or in bad faith).

### 2. Application of Missouri Law

Missouri law could not be clearer on this topic: when an insurance policy providing underinsured motorist ("UIM") coverage incorporates language like that in the Policy here, the insureds are required to "exhaust all applicable policy limits by settlement or obtain a judgment in excess of all applicable liability coverage before [their automobile insurance carrier] is liable under its [UIM] provision." *State ex rel. Shelton v. Mummert*, 879 S.W.2d 525, 530 (Mo. 1994) (*en banc*). As a result, where a plaintiff fails to plead such exhaustion, an action against the UIM carrier is premature, and the claims against the insurance company must be dismissed for failure to state a claim. *State ex rel. Sago By & Through Sago v. O'Brien*, 827 S.W.2d 754, 755 (Mo. Ct. App. 1992) (holding that the provision of an automobile insurance policy conditioning UIM coverage

on a prior determination of damages that exceeded the limits of existing liability coverages made

the insured's claim to recover underinsured motorist coverage premature); *see also Shelton*, 879

S.W.2d. at 530 (agreeing with the holding in *Sago*); *State ex rel. Ehrlich v. Hamilton*, 879 S.W.2d

491 (Mo. 1994) (*en banc*) (dismissing claims against a UIM carrier, citing *Shelton* and *Sago*);

*accord C.J. ex rel. Joerding v. Amco Ins. Co.*, No. 4:05CV1258SNL, 2005 WL 2045917, at *1

(E.D. Mo. Aug. 25, 2005) (dismissing claim against insurer for UIM coverage where the plaintiffs

failed to "first plead and establish recovery of the limits of the tortfeasor's liability policy"). Based

on these cases and the indistinguishable language of the Policy's UIM coverage provision, the

plaintiffs' claims against Farmers—both for breach of the Policy and for bad faith breach of the

Policy—are premature and subject to dismissal on that basis.

    The plaintiffs attempt to avoid this result by arguing that *Shelton* and *Joerding* are

distinguishable. While the plaintiffs are correct that *Shelton* was in a procedurally different

posture[3] and that the complaint in *Joerding* contained contradictory assertions regarding the

---

[3] In *Shelton*, the plaintiffs filed suit against the alleged tortfeasor and the UIM carrier in the City of St. Louis, which was where the insurance company had an office but was not where the car accident had occurred. The insurance company filed a motion to dismiss on the basis that the claims against it were premature, and the tortfeasor filed a motion to transfer venue, arguing that the joinder of the insurance company was "pretensive," as it was joined only for the purpose of obtaining venue in what the plaintiffs perceived as a more plaintiff-friendly venue. The trial court granted the motion to dismiss the insurance company but denied the tortfeasor's motion to transfer venue. *Shelton*, 879 S.W.2d at 526. The tortfeasor then filed a petition for a writ of prohibition, seeking to bar the state court judge in St. Louis from proceeding, on the grounds of improper venue. On appeal, the Missouri Supreme Court was called upon to determine whether the complaint "stated a present cause of action" against the insurance company. *Id.* at 527. If not, under the doctrine of pretensive joinder, venue in St. Louis was improper and transfer was required. Finding that the claims against the insurance company for UIM coverage were premature and, therefore, that the complaint failed to state a present claim against the insurance company for which relief could be granted, its joinder was pretensive. Not only was dismissal of the insurance company appropriate, transfer was required.

monetary value of the plaintiff's damages,[4] the legal principle on which the courts' actions in those cases were premised is the same, and the policy language at issue in those cases is indistinguishable from that here.

The plaintiffs also attempt to argue that public policy concerns mandate permitting them to pursue their claims against Farmers without exhausting their claims against the alleged tortfeasor, defendant Jerry Shipp. The Missouri Supreme Court has rejected that argument as well. In *Shelton*, the plaintiffs likewise argued that "not permitting the joinder of underinsured motorist carriers in these types of lawsuits" had the effect of "(1) requiring multiple lawsuits, (2) discouraging settlements, (3) requiring discovery to be duplicated, and (4) hindering the resolution of claims." *Shelton*, 879 S.W.2d at 528. The Missouri Supreme Court considered each of these possibilities. First, it concluded that the plaintiffs could give notice of the lawsuit against the tortfeasor to their insurance company. If the insurer had such notice and chose not to intervene, it would "be bound by the resulting judgment as to liability and damages," thus alleviating any concern about a multiplicity of lawsuits. *Id.*

The court also rejected the possibility that enforcing the policy as written might discourage settlement with the insurance company, noting that the insurer's incentive to settle and potential liability were the same, regardless of whether it is named as a party in the underlying action.[5]

_____

[4] In *Joerding*, the court noted in a footnote that the complaint alleged both that the tortfeasor's policy limit ($100,000) was insufficient and that the plaintiff had incurred "only $10,000 or so in medical damages." 2005 WL 2045917, at *1 n.2. The court's actual holding was not premised on this contradiction. Instead, it held that dismissal of the plaintiff's UIM coverage carrier was required because the plaintiff had failed to "plead and establish recovery of the limits of the tortfeasor's liability policy," making the lawsuit against the plaintiff's own insurance company premature. *Id.* at *1 (citing *Shelton*, *Ehrlich*, and *Sago*).

[5] The court declined to consider the possibility that UIM provisions would inhibit the ability of the insured parties to settle with the tortfeasor, since this argument "implicitly ask[ed] [the court] to determine the enforceability of contractual provisions that [were] not at issue in [that] case." *Shelton*, 879 S.W.2d at 529.

Regarding the plaintiffs' contention that they might be required to duplicate discovery if the underlying lawsuit was settled and they were then required to sue their UIM coverage carrier, the court observed that this argument "assume[d] that the settlement agreement is reached on the courthouse steps after all discovery has been completed." *Id.* at 529. The court found this to represent a "limited situation that does not justify adding a party whose liability has not matured" and, moreover, that the fact that some discovery might need to be repeated did not justify the rewriting of an insurance policy. *Id.* In the court's view,

> [i]t would be far more egregious to force insurance companies to defend lawsuits where their liability has not matured than to require plaintiffs to occasionally duplicate discovery efforts. Moreover, if the insurer is "vouched in" so as to be bound by the underlying judgment, it would be a lesser step to conclude that it is bound by any discovery in which it could have participated.

*Id.*

Finally, the court acknowledged that the plaintiffs' inability to join the UIM coverage carrier in a lawsuit against an underinsured motorist could mean that a lawsuit against the insurance company would "not be filed until years after the accident occurred." *Id.* The court concluded that this risk was one incurred by the insurance companies in drafting their UIM provisions and that, "[i]f the carrier is concerned about delays, it may intervene in the underlying lawsuit." *Id.* Regardless, the court was "unwilling to allow all plaintiffs with underinsured motorist coverage to join their carrier in the underlying action so that a few legitimate but premature claims can be resolved more expediently," because such an interpretation would require courts to "rewrite insurance contracts" and would "pose an unfair burden on an underinsured motorist carrier whose liability has not matured." *Id.*

Thus, while enforcement of UIM clauses like the one at issue here might violate the public policy of other states, the Missouri Supreme Court has conclusively determined that it does not violate Missouri public policy. Under the applicable choice-of-law rules, Missouri law applies to

this question. It is clear that the plaintiffs' claims against Farmers are premature and, as such, subject to dismissal for failure to state a claim for which relief may be granted.

## III.    MOTION TO INTERVENE

Farmers' Motion to Intervene anticipates that its Motion to Dismiss will be granted (*see* Doc. No. 28, at 1 n.2), and it seeks to intervene as of right under Rule 24 of the Federal Rules of Civil Procedure in order to assert defenses to the plaintiffs' claims against Shipp. It contends that it "claims an interest relating to the . . . transaction that is the subject of the action," that defendant Shipp cannot adequately represent its interests, and that disposing of the action in its absence "may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2).

In response to the motion, the plaintiffs argue only that the Amended Motion to Dismiss should be denied and, on that basis, that the Motion to Intervene should be stricken as unnecessary or denied as moot. (Doc. No. 36, at 1, 2.) It concedes that Missouri law "consistently permits a UIM carrier to intervene in a lawsuit brought by its policyholder against an underinsured motorist where the UIM carrier has 'an interest that may be impaired or impeded if the UIM carrier is not allowed to intervene to contest issues of liability and/or damages.'" (Doc. No. 36, at 2 (quoting *Charles v. Consumers Ins.*, 371 S.W.3d 892, 898 (Mo. Ct. App. 2012), *superseded in part by statute, as recognized by Knight ex rel. Knight v. Knight*, 609 S.W.3d 813, 820–21 (Mo. Ct. App. 2020)).) At the same, however, the plaintiffs contend that the fact that Farmers seeks intervention "necessarily assumes [it has] an interest that may be impaired or impeded which in turn demonstrates that *both* Plaintiffs and Farmers hold a reasonable legal opinion that a UIM case can be made against the insurer." (*Id.*)

This argument is nonsensical, and the court has already determined, as set forth above, that the Complaint fails to state a claim against Farmers for which relief may be granted. That holding says nothing about whether Farmers may have a protectable interest for purposes of intervention

under Rule 24. *See, e.g.*, *Knight*, 609 S.W.3d at 824 (holding that, "[i]n cases involving uninsured or underinsured motorist insurance coverage, an insurer is permitted to intervene when its insured sues the uninsured or underinsured motorist, to contest the uninsured or underinsured driver's liability, or the extent of the insured's damages"); *Boettcher v. Loosier*, No. 2:14-cv-02796-JPM-dkv, 2016 WL 2654384, at *6 (W.D. Tenn. May 4, 2016) (granting UIM carrier's motion to intervene in case in which insureds sued underinsured motorist, based on Kansas law).

A party seeking to intervene as of right must establish four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). Rule 24 should be "broadly construed in favor of potential intervenors. Indeed, in discussing the fourth element of intervention as of right, [the Sixth Circuit has] gone so far as to say that proposed intervenors need only show that there is a potential for inadequate representation." *Id.* at 472 (citations and internal quotation marks omitted).

In determining whether a motion to intervene is timely, a court must consider "all relevant circumstances," including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

There is no contention here that the Motion to Intervene is untimely. The docket reflects that Farmers filed the motion within two months of being served in this case, prior to answering

and before the court conducted an initial case management conference. There is no showing of prejudice, unusual circumstances, or an improper purpose for seeking to intervene. The motion is clearly timely.

Farmers also meets the other three requirements. It has a substantial legal interest in the case, as the questions of Jerry Shipp's liability for the accident and the amount of damages suffered by the plaintiffs directly impact Farmers' ultimate responsibility for payments under the UIM provision in the Policy. Generally, under Missouri law, Farmers will be bound by a judgment in this action, regardless of whether it intervenes. *See Shelton*, 879 S.W.2d at 528 ("If notice is given and [the insurer] chooses not to intervene, it will be bound by the resulting judgment as to liability and damages."). That is, a judgment in the instant case would have *res judicata* effect and limit Farmers' legal rights. For this reason, Missouri courts grant insurers the right to intervene in actions by their insureds against underinsured motorists. *See id.*; *accord Boettcher*, 2016 WL 2654384, at *6 (granting insurer's motion to intervene based on Kansas law). For the same reasons, Shipp cannot adequately represent Farmers' interests, and Farmers' ability to protect its interests would be impaired absent intervention.

## IV.    CONCLUSION

Farmers' original Motion to Dismiss (Doc. No. 25) will be terminated as superseded by the Amended Motion to Dismiss. For the reasons set forth herein, the court will grant both the Amended Motion to Dismiss the direct claims against Farmers and Farmers' Motion to Intervene. (Doc. Nos. 30, 27.) An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge